# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**KERRY WASHINGTON,**

   Plaintiff,

 v.                                                Case No. 19-CV-830

**MILWAUKEE COUNTY,**

   Defendant.

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Kerry Washington, an employee of defendant Milwaukee County (the "County") at its General Mitchell International Airport ("GMIA"), sues the County for race discrimination under 42 U.S.C. § 1981(a), 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 2000e-2(k)(1). (Docket # 1.) The County moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Docket # 16.) For the reasons that follow, the County's motion will be granted in part and denied in part.

## BACKGROUND

Washington, who is African-American, alleges that he has been employed by the County since November 2010 as an Airport Operations Coordinator at GMIA. (Compl. ¶¶ 1, 7, Docket # 1.) Washington has applied for several promotions since he was hired, and the County has declined each of Washington's applications without an interview. (*Id.* ¶ 9.) Washington asserts that he was the best-qualified candidate for most of the positions he applied for. (*Id.* ¶ 10.) In 2018, Washington applied for the promotional positions of Assistant Manager of Airport Operations, Airside Coordinator, and Security Coordinator.

(*Id.* ¶ 11.) Washington alleges that the County selected less-qualified white candidates. (*Id.*) Washington alleges that he also applied for promotional positions in 2012 and 2015 and was rejected in favor of less-qualified white candidates. (*Id.* ¶¶ 12–13.) Washington's complaint asserts that statistics of hiring and promotions at GMIA will show large disparities in salaries and a lack of African-Americans in the managerial and supervisory positions that Washington applied for. (*Id.* ¶ 14.)

On August 3, 2018, Washington, who was represented by counsel, filed a complaint with the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"). (Docket # 17-1 at 3–4.) The charge was dual-filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 5.) Pursuant to a work-sharing agreement, the ERD commenced investigation of the charge while the EEOC deferred. (Docket # 17-6.) On October 2, 2018, the ERD wrote to Washington's attorney requesting a written response to information provided by the County, as well as the names and addresses of any supportive witnesses, by October 22, 2018. (Docket # 17-2.) On October 25, 2018, the ERD notified Washington's attorney that it had not received a response:

> It is necessary for you to cooperate in the investigation of your client's complaint. This will be your last opportunity to provide the information requested in my previous letter.
>
> You must send us your written response within 20 days of the date of this letter. . . . If no response is received by November 14, 2018, your complaint will be dismissed by the Equal Rights Division.

(Docket # 17-3.) Washington was copied on this letter. (*Id.*) On December 4, 2018, the ERD sent Washington a notice of final dismissal within twenty days if he did not respond, stating that Washington "has failed to respond to requests for information and the evidence in the file does not support a probable cause finding. Therefore, the case is being dismissed

because the Complainant has failed to respond to a 20-day Certified letter." (Docket # 17-4.) On December 7, 2018, the ERD ordered the complaint dismissed, but not for failure to respond; rather, the dismissal stated that the complainant had signed a written request to withdraw the complaint and requested that the EEOC investigate the federal law claims. (Docket # 17-5.)

The EEOC reopened Washington's charge of discrimination and wrote Washington's attorney requesting information showing that the reasons Milwaukee County gave for denying promotions to Washington were not the actual reasons for the denials. (Docket # 17-7, Docket # 17-8.) The letter also indicated that some of the discriminatory acts Washington complained of, going as far back as 2010, may be untimely due to the 300-day limitations period for filing a charge. (*Id.* at 2.) The letter indicated:

> If you do not respond within thirty (30) days of the date of this letter, the Commission may conclude that either your client does not have any additional information to submit or does not disagree with the Respondent's position and may make a determination based on the evidence, or administratively close your client's charge based on failure to respond. If, upon review of your client's rebuttal, the Office determines that further investigation will not result in finding a violation, your client will be issued a Dismissal and Notice of Right to Sue, and an explanation of his/her private litigation rights.

(*Id.*) On March 5, 2019, the EEOC issued a dismissal and right-to-sue letter, explaining its determination as follows:

> Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statues. No finding is made as to any other issues that might be construed as having been raised by this charge.

(Docket # 17-10.) On March 7, 2019, Washington's attorney emailed the EEOC investigator requesting a right-to-sue letter, and learned that it had been issued a few days earlier. (Docket # 17-9.)

Washington filed his complaint in this court on June 3, 2019. (Docket # 1.) On July 31, 2019, the County filed its answer. (Docket # 7.) The County's motion for judgment on the pleadings (Docket # 16) is now fully briefed and ready for resolution.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings under Rule 12(c) is granted "only if 'it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief.'" *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (internal citations omitted). The moving party should be "clearly entitled to judgment." *Edmonds v. United States*, 148 F. Supp. 185, 186 (E.D. Wis. 1957). In order to succeed, "the moving party must demonstrate that there are no material issues of fact to be resolved." *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. Further, the complaint must be construed in the manner most favorable to the nonmoving party. *Id.* (citing *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir. 1995)). A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is decided in the same manner as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* In determining if the complaint is sufficient, the court looks only to the pleadings, which include "the complaint, the answer, and any written instruments attached as exhibits." *Id.* (internal citations omitted).

## ANALYSIS

Washington claims that the County's failure to promote him violated Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981(a) ("§ 1981"), as well as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"). (Compl. ¶¶ 16–17.) Washington also claims that the County violated 42 U.S.C. § 2000e-2(k)(1) by having an employment practice that discriminates against African-American employees in promotions. (*Id.* ¶ 18.)

The County moves for judgment on the pleadings. First, the County argues that some of Washington's claims are time-barred. (Def.'s Br. at 4, 7, Docket # 17.) Second, the County asserts that Washington failed to exhaust his administrative remedies under Title VII. (*Id.* at 5–6.) Finally, the County maintains that Washington's remaining claims are not cognizable under § 1981. (*Id.* at 6–7.) The County also requested a stay in discovery pending resolution of this motion. (*Id.* at 7.)

   1.   *42 U.S.C. § 1981*

The County argues that some of Washington's allegations under § 1981 are time-barred, and also that his § 1981 claim must be dismissed because the complaint does not allege purposeful discrimination. (Def.'s Br. at 6–7 (citing *General Bldg. Contractors Ass'n, Inc. v. Pennsylvania, et al.*, 458 U.S. 375, 386, 391 (1982); *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir. 1979)).

In fact, Washington's § 1981 claim suffers from a different defect: § 1981 does not create a private right of action against state actors. *Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 666 (7th Cir. 2014). Rather, 42 U.S.C. § 1983 is "the exclusive remedy for violations of § 1981 committed by state actors." *Id.* at 671. Thus, the complaint fails to state

a claim against Milwaukee County under § 1981, and the County is entitled to judgment on the pleadings on that claim. Washington shall have twenty-one (21) days to re-plead his claim under § 1983, if desired.

Even had Washington pleaded his claim under the proper statute, the defendants would not be entitled to judgment on the pleadings due to untimeliness. In Wisconsin, claims under § 1983 have a six-year statute of limitations. *Reget v. City of La Crosse*, 595 F.3d 691, 694 (7th Cir. 2010); *Malone v. Corrections Corp. of America*, 553 F.3d 540, 542 (7th Cir. 2009). Washington alleges that he was denied promotions on the basis of race in 2018 and 2015, and he filed his complaint in 2019—well within the limitations period. Accordingly, a § 1983 claim would not be time-barred.

Similarly, the County's argument that Washington's complaint does not allege purposeful discrimination would be unavailing under either statute. A complaint may allege intent generally, and discriminatory intent is deemed to be implicit in a discrimination claim. *Phillips v. Baxter*, 768 F. App'x 555, 559 (7th Cir. 2019) (citing Fed. R. Civ. P. 9(b); *Alexander v. United States*, 721 F.3d 418, 424 (7th Cir. 2013)); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). To state a claim of race discrimination, a plaintiff need only allege that the employer instituted a specific adverse employment action against him based on his race. *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002); *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014); *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013)); *see also Bennett*, 153 F.3d at 518 ("'I was turned down for a job because of my race' is all a complaint has to say."). Washington claims that the County denied him promotions because of his race. (Compl. ¶ 16.) Furthermore, his timely allegations include

that he was denied promotions in favor of less-qualified white applicants. (*Id.* ¶ 11–12.) From these allegations, I can reasonably infer discriminatory intent.

> 2. *Title VII*
>
>> 2.1 Statute of Limitations

The County asserts that some of Washington's Title VII allegations are time-barred. (Def.'s Br. at 4.) Before a plaintiff files a suit under Title VII, he must file a timely administrative complaint. 42 U.S.C. § 2000e-5(e)(1). In Wisconsin, a Title VII plaintiff has 300 days from the alleged discriminatory act to file an administrative complaint. *See* 42 U.S.C. § 2000e-5(e); *Johnson v. J.B. Hunt Transp., Inc.*, 280 F.3d 1125, 1128–29 (7th Cir. 2002). Failure to file a timely administrative complaint is a bar to suit. *See Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007). Washington filed his initial charge with the ERD on August 3, 2018. (Docket # 17-1 at 3–4.) Thus, Washington is barred from claiming a Title VII violation for discrimination occurring prior to October 7, 2017. Washington alleges that he was denied a promotion on the basis of race in 2018, so that claim is timely under Title VII. Because Washington has alleged a violation of § 2000e-2(a)(1) within the limitations period for a Title VII claim, the County is not entitled to judgment on the pleadings on this basis.

Neither does the untimeliness of Washington's allegations of failure to promote in 2012 and 2015 doom Washington's claim of a discriminatory employment practice. To state a race-based disparate-impact claim, as Washington appears to intend, the plaintiff must plausibly allege that the defendant has established an employment practice that causes a disparate impact on the basis of race. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1006 (7th Cir. 2019) (citing *Adams v. City of Indianapolis*, 742 F.3d 720, 730–31 (7th Cir. 2014)). "Disparate-

impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their claims. At the pleading stage, some basic allegations of this sort will suffice." *Adams*, 742 F.3d at 733. Washington's complaint alleges statistical discrepancies in salaries and representation of African-Americans in managerial roles at GMIA. (Compl. ¶ 14.) Washington's ERD complaint, incorporated by reference into the complaint (*id.* ¶ 6), alleges that "[t]he hiring practices at [GMIA] . . . have a disparate impact on candidates seeking promotional opportunities . . . ." (Docket # 17-1 at 4.) These allegations state a claim for ongoing disparate-impact discrimination without any need for consideration of the 2012 or 2015 incidents.

Washington argues, unnecessarily, that his untimely allegations can be used to show a pattern or practice of discriminating against African-Americans seeking promotion at GMIA. (Resp. Br. at 5–6, Docket # 18 (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002); 7th Cir. Jury Instr. 3.03 (Pattern or Practice)).) Washington appears to be invoking the "continuing violation" doctrine to argue that a series of acts collectively constitute one unlawful employment practice. That is a misuse of the doctrine, which "allows [a plaintiff] to delay suing until a series of acts by a prospective defendant blossoms into a wrongful injury on which a suit can be based." *Lewis v. City of Chicago*, 528 F.3d 488, 493 (7th Cir. 2008). Typical continuing violation claims include sexual harassment or hostile work environment, where a single offensive incident may not amount to actionable conduct, but the cumulative effect of multiple incidents over time does. *Id.*; *see also Coleman v. Cook County*, No. 09 CV 739, 2010 WL 725322, at *3–4 (N.D. Ill. Feb. 25, 2010) (citing *Stepney v. Naperville School Dist. 203*, 392 F.3d 236, 239–41 (7th Cir. 2004)). A plaintiff cannot maneuver around the statute of limitations by recasting discrete incidents of discrimination

8

as one single ongoing unlawful employment practice. *See Plantan v. Harry S. Truman College*, No. 10 C 108, 2011 WL 5122691, at *7 (N.D. Ill. Oct. 28, 2011); *Lancaster-Williams v. Pods Enterprises, Inc.*, No. 08 C 7144, 2010 WL 2382402, at *7 (N.D. Ill. June 10, 2010); *Mull v. Abbott Laboratories*, 563 F. Supp. 2d 925, 929–30 (N.D. Ill. 2008). Washington alleges racially motivated denials of promotions in 2012 and 2015, each of which was a discrete act that could have been the subject of its own complaint. Because Washington did not file a charge within 300 days of these acts, claims based on those acts are barred.

However, as explained, Washington's other allegations save his disparate-impact claim without regard to the untimely allegations. Therefore, the County is not entitled to judgment on the pleadings on this claim.

### 2.2 Failure to Exhaust Administrative Remedies

The County argues that Washington's Title VII claims are barred because he did not exhaust his administrative remedies. (Def.'s Br. at 5–6.) The County suggests that Washington's failure to provide the information requested by both the ERD and the EEOC to facilitate their investigations constituted a failure to exhaust administrative remedies that precludes suit in federal court. (*Id.*) The County finds support from some circuit courts of appeals who have held that a Title VII plaintiff who fails to cooperate with the administrative investigation foregoes the opportunity to sue in federal court. (*Id.* at 5 (citing, *inter alia*, *Johnson v. Bergard*, 614 F.2d 415, 419 (5th Cir. 1980); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304 (10th Cir. 2001); *Barnett v. Nevada ex rel. Its Dep't of Prisons*, 5 F. App'x 629 (9th Cir. 2001)).)

However, the Seventh Circuit Court of Appeals has squarely rejected a requirement that Title VII plaintiffs cooperate with agency investigations as a precondition to federal

9

suit. In *Doe v. Oberweis Dairy*, 456 F.3d 704 (7th Cir. 2006), the EEOC had dismissed the plaintiff's complaint for failure to cooperate, but the court held that the plaintiff had nevertheless fulfilled the requirements to bring a Title VII suit. *Id.* The court rejected the Tenth Circuit's reasoning in *Shikles*, explaining that Title VII's text imposes no duty of cooperation and its procedural requirements are not akin to traditional administrative exhaustion. *Id.* at 708–12. Furthermore, the court expressed practical concerns about the difficulty of defining the scope of any such duty, and about the effect on litigation if employers could raise such a defense in every Title VII case. *Id.* at 710–11. *Doe* thus held that failure to cooperate with the agency investigation is not a bar to a Title VII suit. *See also Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 903 (7th Cir. 1999) (Title VII complainant who abandoned agency proceedings could sue despite failure to cooperate with agency)).

The County protests against applying *Doe* here, arguing that *Doe* is inapposite because, unlike Washington, the plaintiff had substantially cooperated with the EEOC. (Reply Br. at 1–3, Docket # 20.) The County argues that the language in *Doe* relieving plaintiffs from the duty of cooperating with the agency was mere dicta, that allowing Washington to proceed would undermine the purpose of the administrative procedures, and that Washington should not be allowed to "game[ ] the system." (Def.'s Br. at 5–6, Reply Br. at 1–6.)

The County misunderstands *Doe*, which clearly held that Title VII does not impose a duty to cooperate with the agency investigation as a precondition to federal suit. *Cf. Williams v. Milwaukee Health Servs., Inc.*, 732 F.3d 770, 771 (7th Cir. 2013) (citing *Doe* to contrast Title VII's procedural requirements with administrative exhaustion); *Johnson v. Maryland Department of Labor, Licensing, and Regulation*, 386 F. Supp. 3d 608, 616–17 (D. Md. 2019)

(citing *Doe* in concluding that plaintiff need not show good-faith efforts at conciliation during EEOC process). Contrary to the County's reading of *Doe*, the court did not determine that the plaintiff had "exhausted" her administrative remedies because she had mostly cooperated with the EEOC—indeed, the court mentioned her degree of cooperation only to show how difficult it would be to define the standard for cooperation. *Doe*, 456 F.3d at 711. The plaintiff in *Doe* had "exhausted" her administrative remedies because she had timely filed a charge and received a right-to-sue letter. No more was required.

As for the County's concerns about undermining the purposes of the EEOC and "gaming the system," the Seventh Circuit fully acknowledged such concerns but believed them to be insignificant, pointing to the fact that the EEOC itself opposed the Tenth Circuit's imposition of a cooperation requirement in *Shikles*. *Doe*, 456 F.3d at 710. While there may be cases of egregious delay or bad faith that might influence a court's refusal to entertain a Title VII suit, *see, e.g.*, *Dowell v. Toyota of Danville, Inc.*, No. 16-CV-2020, 2017 WL 5759981, at *5–6 (C.D. Ill. Jan. 9, 2017) (charges were a decade old and not only had plaintiff delayed but EEOC's right-to-sue letter was untimely), there was no notable delay in this case and no evidence of bad faith underlying Washington's failure to provide the requested information.

For these reasons, I see no basis for judgment on the pleadings due to failure to exhaust administrative remedies.

3.  *Stay of Discovery*

The County has requested that discovery be stayed pending resolution of the motion for judgment on the pleadings. (Def.'s Br. at 7.) As this order resolves that motion, the request to stay discovery is now moot.

**ORDER**

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for judgment on pleadings (Docket # 16) is **GRANTED IN PART AND DENIED IN PART**. Washington's claim under § 1981 is **DISMISSED**. Any Amended Complaint must be **filed within twenty-one (21) days** of the date of this Decision and Order.

Dated at Milwaukee, Wisconsin this 14th day of January, 2020.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge