UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KERRY WASHINGTON,

    Plaintiff,

v.                                           Case No. 19-CV-830

MILWAUKEE COUNTY,

    Defendant.

---

## DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Kerry Washington sues his employer, Milwaukee County, alleging that he was denied promotions due to his race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Milwaukee County has moved for summary judgment dismissing Washington's complaint. For the reasons explained below, Milwaukee County's motion is granted and this case is dismissed.

## BACKGROUND FACTS

In November 2010, Kerry Washington, an African American man, was hired by Milwaukee County as a Landside Coordinator at the General Mitchell International Airport ("GMIA"). (Def.'s Proposed Findings of Fact ("DPFOF") ¶ 1, Docket # 26 and Pl.'s Resp. to DPFOF ("Pl.'s Resp.") ¶ 1, Docket # 32.) During the summer of 2018, GMIA reorganized its operations to merge the Landside Operations team with the Airside Operations team to form one team with responsibility for all airport operations within the terminal and on the airfield, collectively. (*Id.* ¶ 4.) As part of this merger, the Landside Coordinator position and the Airport Control Center Operator position were eliminated and

the new position of Airport Operations Coordinator I was created. (*Id.* ¶ 5.) The newly created position of Airside Operations Coordinator I held more duties and responsibilities than the Landside Coordinator position and the position was rated at a higher pay range. (*Id.* ¶ 6.) On or about June 16, 2018, Washington was reclassified into the Airside Operations Coordinator I position. (*Id.* ¶ 8.)

In 2018, Washington applied to four job openings posted by Milwaukee County: Assistant Manager of Airport Operations, Airport Public Safety and Security Coordinator, Facilities Supervisor, and Airport Operations Coordinator II. (*Id.* ¶ 18.)[1] Milwaukee County posted the position of Airport Public Safety and Security Coordinator, with a closing date for applications of May 3, 2018. (*Id.* ¶ 47.) Washington applied for the position on May 3, 2018. (Declaration of Angela Nixon ("Nixon Decl.") ¶ 3, l, Ex. 1012, Docket # 28-13.) Washington met the minimum qualifications for the position. (DPFOF ¶ 48 and Pl.'s Resp. ¶ 48.) Lydia Beairsto was the hiring manager responsible for reviewing and selecting applicants to interview for the Airport Public Safety and Security Coordinator position. (Amended Declaration of Angela Nixon ("Am. Nixon Decl.") ¶ 14, Docket # 35.) Ken Henning, a white male, was hired for the position of Airport Public Safety and Security Coordinator. (*Id.* ¶ 13.)

Milwaukee County posted the position of Airport Operations Coordinator II, with a closing date for applications of July 3, 2018. (DPFOF ¶ 50 and Pl.'s Resp. ¶ 50.) Washington applied for the position on June 20, 2018. (Am. Nixon Decl. ¶ 3, o, Ex. 1015,

---

[1] In his brief in opposition to Milwaukee County's summary judgment motion, Washington agrees to dismiss claims related to his application for the positions of Assistant Manager of Airport Operations and Facilities Supervisor (as well as his disparate impact claim), and only pursues claims related to his application for the positions of Airport Public Safety and Security Coordinator and Airport Operations Coordinator II. (Pl.'s Br. at 6–7, Docket # 34.)

2

Docket # 35-16.) Angela Nixon, the Employment Manager with the Milwaukee County Department of Human Resources, avers that the position of Airport Operations Coordinator II required a minimum of two years of experience coordinating construction and maintenance on airfield projects. (Nixon Decl. ¶ 5 and Ex. 1015.) On his application, Washington responded in the negative to a screening question asking whether he had the requisite minimum two years of experience coordinating construction and maintenance on airfield projects. (DPFOF ¶ 52 and Pl.'s Resp. ¶ 52.) Andrew Arnold, a white male, was elevated to the position of Airport Operations Coordinator II sometime in 2020. (Pl.'s Proposed Findings of Fact ("PPFOF") ¶ 11, Docket # 33 and Def.'s Resp. to PPFOF ("Def.'s Resp.") ¶ 11, Docket # 37.)

On August 3, 2018, Washington, represented by counsel, filed a complaint with the Wisconsin Department of Workforce Development Equal Rights Division ("ERD"). (Supplemental Declaration of Melinda Lawrence ("Supp. Lawrence Decl.") ¶ 12, Ex. 1025, Docket # 39-2 at 18–21.) The charge was also filed with the U.S. Equal Employment Opportunity Commission ("EEOC"). (*Id.* at 22.) In the statement of discrimination, Washington stated as follows:

> Sections 111.321 and 111.322(1) of the Wisconsin Statutes prohibits discrimination based on race in promotions. Kerry Washington is black. Milwaukee County hired Washington in November 2010 as an Airport Operations Coordinator. Washington earned his Masters of Science Management in December 2012 and has applied to more than 30 promotional opportunities since he was hired. Milwaukee County has declined each application, without an interview. Washington was the best qualified applicant for most of the positions he applied for. For example, in February 2018, Washington applied for Assistant Manager of Airport Operations. Milwaukee County selected a less qualified white candidate.
>
> Milwaukee County denied promotional opportunities to Washington because of his race in violation of Sections 111.321 and 111.322(1). The

3

> hiring practices at the General Mitchell International Airport, in particular, create and have a disparate impact on black candidates seeking promotional opportunities in violation of Sections 111.321 and 111.322(1).

(*Id.* at 21.)

On December 4, 2018, Washington submitted a written request to the ERD to withdraw his complaint, requesting that the EEOC investigate the federal law claims. ("Supp. Lawrence Decl.") ¶ 11, Ex. 1024, Docket # 39-1 at 2.) The EEOC reopened Washington's charge of discrimination (Docket # 17-8) and a right-to-sue letter was issued on March 5, 2019 (Docket # 17-10).

Washington filed a complaint in federal court on June 3, 2019, alleging that in 2018, Washington applied for the promotional positions of Assistant Manager of Airport Operations, Airside Coordinator, and Security Coordinator and Milwaukee County selected less qualified white candidates. (Compl. ¶ 11, Docket # 1.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Washington asserts that Milwaukee County failed to promote him for the positions of Airport Public Safety and Security Coordinator and Airport Operations Coordinator II because of his race. (Docket # 34 at 6–7.) Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Milwaukee County argues that Washington did not exhaust his administrative remedies as to his failure to promote claims for the positions of Airport Public Safety and Security Coordinator and Airport Operations Coordinator II because he did not include these claims in his charge of discrimination before the ERD and the EEOC. Title VII

requires a plaintiff to exhaust administrative remedies by filing a charge with the EEOC or the appropriate state or local agency before the plaintiff may proceed to court. *See* 42 U.S.C. §§ 2000e-5(e)(1), 2000e-5(f)(1); *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). The charge filed with the agency will limit the claims the plaintiff later may pursue in litigation because the court may only hear claims that were included in the EEOC charge or that are "reasonably related" to the allegations of the charge. *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir. 2004). In other words, the claims brought to court must be "within the scope" of the EEOC charge, for "an aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Conner v. Illinois Dep't. of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005) (internal quotation and citation omitted). At a minimum, the complaint filed in the district court and the charge filed with the EEOC must describe the same circumstances and participants so that the EEOC may have the opportunity to investigate the allegedly discriminatory conduct and to seek voluntary compliance or conciliation without a lawsuit. *Cheek*, 31 F.3d at 500.

Again, Washington's administrative charge stated that he was denied promotions because of his race. (Docket # 39-2 at 21.) He alleged that since his hire in November 2010, he applied to more than thirty promotional positions and was declined for each without an interview, despite being "the best qualified applicant for most of the positions he applied for." (*Id.*) Washington cites, "for example," his February 2018 application for Assistant Manager of Airport Operations. (*Id.*) Although Washington's administrative charge does not specifically mention the two promotions he now argues form the basis of his Title VII claim, he contends that those positions are reasonably related to the allegations of the

6

charge and that the Seventh Circuit grants the Title VII plaintiff "significant leeway" when making this determination. (Docket # 34 at 3 (quoting *Cheek*, 31 F.3d at 500).) Washington further argues that because Milwaukee County has a duty to keep personnel records used to determine an employee's qualification for promotion, Milwaukee County had fair notice of these claims and is not prejudiced by his failure to articulate them in the ERD/EEOC charge. (*Id.* at 5.)

Washington argues, in effect, that by generally asserting that he was denied over thirty promotions in a nearly eight-year period (only some of which, according to him, he was the most qualified candidate), this afforded the EEOC and Milwaukee County a reasonable opportunity to investigate and settle the disputes he now claims. Washington is incorrect. An employment decision such as a failure to promote is a discrete act that occurs when the allegedly discriminatory decision is made. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The Supreme Court has stated that such actions are separate incidents of discrimination, with each incident constituting its own actionable claim. *Id*. Washington only specifically complains of his February 2018 application for Assistant Manager of Airport Operations—a position that he no longer seeks relief for. Washington cannot expect that the EEOC and Milwaukee County had proper notice of his failure to promote claims for two very specific positions in 2018 simply because he stated that he was denied over thirty promotions during an eight-year period. "Some specificity in a charge . . . [s]ome detail . . . is necessary to allow the agency to perform its statutory duty." *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir. 1992). And Washington *did* mention one specific position—his February 2018 application for Assistant Manager of Airport Operations—in his charge. Thus, how was the EEOC to know that Washington also sought relief for the

7

Airport Public Safety and Security Coordinator and Airport Operations Coordinator II positions? Expecting the EEOC and Milwaukee County to cull through eight years of applications for over thirty promotions to surmise which positions Washington claims he was denied due to his race is completely unreasonable.

Furthermore, Washington's failure to promote claims regarding the Airport Public Safety and Security Coordinator and Airport Operations Coordinator II positions are not reasonably related to the Assistant Manager of Airport Operations position simply because they are all claims of non-promotion involving the same employer. *See Gee v. Metaldyne Corp.*, No. 1:08-CV-0097DFHJMS, 2008 WL 4936865, at *4 (S.D. Ind. Nov. 14, 2008) (finding that a Title VII claim for failure to promote based on August and November 2005 promotions was not "like or reasonably related" to the January 2006 promotion claim raised in the EEOC charge). The promotions at issue were for different positions—each position having different minimum qualifications, responsibilities, and duties (Am. Nixon Decl. ¶¶ 3, c, k, n, Exs. 1003, 1011, 1014)—and would qualify as discrete acts of alleged discrimination. Washington's charge that he was not promoted for the Assistant Manager of Airport Operations position and his very general, non-specific claim that he was not promoted to over thirty positions due to his race, was insufficient to put Milwaukee County and the EEOC on notice that he was also complaining that he had been passed over for promotions for the Airport Public Safety and Security Coordinator and Airport Operations Coordinator II positions. Had Washington wished to pursue discrimination claims based on those discrete acts, he should have filed separate, timely EEOC charges.

As a final note, Washington seeks the benefit of the "significant leeway" the Seventh Circuit usually affords Title VII plaintiffs when determining whether the federal claims are

8

within the scope of the EEOC charge. But the rationale for giving the Title VII plaintiff "significant leeway" is "because most EEOC charges are completed by laypersons rather than by lawyers." *Cheek*, 31 F.3d at 500. Washington, in contrast, was represented by counsel during his administrative process. (Docket # 39-2 at 18–19.) In fact, Washington's counsel, the same counsel representing him in this lawsuit, signed his ERD charge. (*Id.* at 21.) The Seventh Circuit has stated that when a Title VII plaintiff is advised by counsel at the stage of filing an administrative charge, "it is not unreasonable to require some additional specificity or detail as a condition precedent" to bringing his claim. *Rush*, 966 F.2d at 1112. Beyond the lack of detail in his administrative charge, Washington does not even allege a failure to promote claim based on these two positions in his federal complaint. Rather, he alleges he was passed over for promotional positions in 2018 for Assistant Manager of Airport Operations, Airside Coordinator, and Security Coordinator. (Compl. ¶ 11.) And Washington himself avers that the white male, Andrew Arnold, who was selected for the Airport Operators Coordinator II position over him, obtained that position sometime in 2020. (Declaration of Kerry Washington ¶ 6, Docket # 31.) It is unclear, then, how the EEOC, who issued Washington's right-to-sue letter on March 5, 2019, was ever on notice of this claim. For these reasons, I find that Washington did not administratively exhaust his failure to promote claims for the positions of Airport Public Safety and Security Coordinator and Airport Operations Coordinator II. Washington has agreed to dismiss the remaining claims in his complaint. Thus, Milwaukee County's motion for summary judgment is granted and Washington's complaint is dismissed.

## CONCLUSION

Washington alleges that his employer, Milwaukee County, discriminated against him on the basis of his race by failing to promote him to two distinct positions—Airport Public Safety and Security Coordinator and Airport Operations Coordinator II. Washington did not, however, raise either of these claims in his charge of discrimination filed before the ERD/EEOC. For this reason, Washington has failed to administratively exhaust the claims and they are dismissed. Washington agrees to dismiss his remaining claims for disparate impact and discrimination for failure to promote to the positions of Assistant Manager of Airport Operations and Facilities Supervisor. For these reasons, summary judgment is granted in favor of Milwaukee County. Washington's complaint is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendant's motion for summary judgment (Docket # 25) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 5th day of March, 2021.

BY THE COURT:

*Nancy Joseph*

NANCY JOSEPH
United States Magistrate Judge